Plaintiffs, husband and wife, filed a joint petition against the defendant for damages resulting from a fall by the wife on the sidewalk in front of the service station operated by the defendant on April 20, 1940, located at the corner of Dufrocq and Spain Streets in the City of Baton Rouge. The petition alleges that the defendant "negligently and carelessly permitted water, oil and grease to escape from said parcel of ground, flow across said banquette and remain on said banquette." It is further alleged: "That the said water, oil and grease made extremely slippery that part of said banquette on which said water, oil and grease was as aforesaid."
It is alleged in the petition that Mrs. Ives was walking northward on said banquette and slipped and fell to the ground on account of the slipperiness of the walk caused by said water, oil and grease. She claims to have suffered an injury to her left shoulder and a severe strain and sprain to her back, which aggravated a previous abnormal condition of her sacrum. She prays for damages in the sum of $10,000 for personal injuries, and her husband claims damages in the sum of $5,000 loss to the community in the earning capacity of Mrs. Ives, plus the sum of $144.21 for medical expenses incurred on account of her injuries.
The defendant denied any negligence on his part, and also denied that plaintiff, Mrs. Ives, fell as she claims. The defendant made a general allegation of contributory negligence on the part of Mrs. Ives.
The trial court rendered a judgment in favor of defendant and dismissed the suit of both plaintiffs. They have appealed. *Page 499 
Mrs. Ives testified that she was walking North on the west side of Dufrocq Street around 3 o'clock in the afternoon on the above mentioned date, and when she reached a point on the sidewalk opposite the service station of the defendant, she saw some water running from the station across the walk and into the street; that she continued across this water and after she had taken two or three steps in it, her feet slipped out from under her to the right, and she fell on her left side and tried to catch her fall with her left hand; that she crawled to a dry spot on the banquette and when she got up she found her stockings were torn, and her clothes were soiled with water, oil and grease. She told the manager about the fall, and he stated that the negro boy at the washing rack had spilt some oil and he was washing it up; that the manager paid her 79 or 89 cents for her torn stockings, and told her to have her clothes cleaned and he would pay the bill for the cleaning; that later on he paid for this service which was a very small amount. Mrs. Ives stated that there was oil or grease in the water which was coming over the sidewalk from the station but that she could not see the oil or grease in the water until she had started across it. She had passed over water on the sidewalk before, and had not slipped down.
No other person actually saw Mrs. Ives fall but soon after she fell, Mrs. Pittman saw her and testified that the dress of Mrs. Ives was wet and had oil stains on it. When Mrs. Ives reached home shortly after the fall, her husband saw her and testified that her clothes were all greasy and wet; that her stockings were torn and she had water and oil on her left leg and hip, and her shoes were oily.
Several employees of defendant at the service station testified in the case. Mr. Davidson, the manager, stated that Mrs. Ives came to him after the accident and the lower part of her clothes and her stockings were wet, but that there was no grease or oil on her clothes. He admits paying Mrs. Ives for her stockings and told her he would pay for laundering of her clothes, but that she said, "never mind, I will take care of that." He testified that a colored boy was washing down the front of the station with water, and the walk was wet from the water, but there was no grease or oil in it. Mr. Davidson denied that he told Mrs. Ives that the colored boy had spilt some oil and the boy was washing it up. He also denied that he paid Mrs. Ives for cleaning her clothes.
The testimony of Mr. Davidson is corroborated to some extent by other employees who were working around the station and none of these employees saw Mrs. Ives fall, but some of them admitted that they saw her after the fall, and her clothes were wet. All of these employees denied that there was any grease or oil in the water which was running over the sidewalk from the hose pipe. They explained how the grease and oil around the station was taken up with a preparation called varsol. They further stated that the water from the washing rack was carried off in a drain pipe, and none of the water used in washing cars ran across the sidewalk.
[1, 2] The right of plaintiffs to recover depends on whether or not they have shown with legal certainty that there was oil and grease in the water which was running over the sidewalk from the service station. The duty of a person whose property adjoins a street to travelers on the sidewalk is expressed in Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 7, Perm.Ed., § 5077, as follows:
"An owner of property abutting on a street owes the duty to the public to exercise reasonable care to avoid rendering the sidewalk unsafe, and a garage keeper or proprietor of a public service automobile supply station is under obligation to refrain from doing things that will render the adjacent walks unsafe for public travel, and, if he conducts his business in such a manner as to cause the walk to become slippery from gasoline spilled thereon, and unsafe for public travel, he will be liable for injuries resulting therefrom to travelers on the walk.
"Thus, it is the duty of the proprietor of an automobile service station using the street for the removal of waste oil from such service station to see that oil is not *Page 500 
left upon the sidewalk, or, if it is so left, to provide some proper protection for the public, and when it neglects this duty, it may be liable to one slipping on the oil for the injuries sustained.
"A garage owner, however, who, in operating automobiles in and out of his garage, uses the sidewalk is not an insurer of the safety of pedestrians in so doing, and in the absence of negligence is not liable for an injury to a pedestrian."
In support of the principle stated above the following cases are cited: Collais v. Buck Powers Oil Co., 175 Wn. 263,27 P.2d 118; Hanlon v. City of Waterbury, 108 Conn. 197,142 A. 681, and Texas Co. v. Grant, Tex.Civ.App., 179 S.W.2d 1007.
[3, 4] Counsel for the plaintiffs make an effort to show that, even if there was no oil or grease in the water, it was negligence to cause the water from the hose pipe to flow over the sidewalk. As stated in the above quoted extract from Blashfield, the owner of the service station only owed a duty to the public to exercise reasonable care to avoid rendering the sidewalk unsafe. The mere washing of the front of a building and permitting the water from a hose pipe to flow over the walk is not such an act as to make the walk unsafe for a person exercising ordinary care. In fact, Mrs. Ives admitted herself that she had passed by this station before when water was running over the walk and she suffered no ill consequences. It is a matter of common knowledge that the owners of buildings abutting the sidewalk often use hose pipes to clean or water their premises and this water runs over the walk.It might be that there could be such a quantity of water, coupled with the condition of the walk, as to make such an act negligence.
However, it is not shown in this case that there was an undue amount of water thrown over the walk or that there was an unusual condition of the walk at that point.
[5] The trial judge must have found that there was no oil and grease on the sidewalk. Our examination of the record convinces us that the preponderance of the evidence is to the effect that there was no oil and grease in the water which defendant's employee was throwing on the station with a hose. Nor do we find any facts which would justify the conclusion that there was anything unusual or out of the ordinary in the methods being used to clean the station with water.
For the reasons assigned, the judgment appealed from is hereby affirmed.